**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 20-21918-CIV-COOKE/GOODMAN**

JENNIESEL GARCIA O.B.O. A.G.,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Jenniesel Garcia ("Plaintiff's mother"), on behalf of her son, A.G. ("Plaintiff"), and Defendant Kilolo Kijakazi,[1] Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 23; 26]. The Commissioner's summary judgment motion also served as her opposition response to Plaintiff's motion. [ECF No. 27]. Plaintiff filed a response to the Commissioner's summary judgment motion [ECF No. 28], which also served as his reply to the Commissioner's response [ECF No.

---

[1]     Plaintiff's initial suit was brought against Andrew Saul, the Acting Commissioner at the time of filing. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi should be substituted for Andrew Saul as the suit's Defendant.

29].

According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter Final Judgment in favor of the Commissioner.

## I.   Procedural Background

In a November 5, 2012, determination, Plaintiff was found to be disabled as of April 23, 2012. (R. 15; 146). On January 6, 2017, the Social Security Administration ("SSA") issued a cessation letter to Plaintiff after having determined he was no longer disabled as of January 1, 2017. (R. 99-109; 113-18). On March 30, 2017, Plaintiff appealed the cessation determination. (R. 122-23; 125-28). The cessation determination was upheld by a Disability Hearing Officer after a November 20, 2017 hearing. (R. 144-53).

Plaintiff next requested a hearing before an Administrative Law Judge. (R. 162-64). The initial hearing was continued (R. 82-98) and Plaintiff, along with Plaintiff's mother, appeared before Administrative Law Judge Lornette Reynolds (the "ALJ") on May 3, 2019. (R. 15). After the hearing, the ALJ concluded Plaintiff's disability ended on January 1, 2017 and he has not become disabled again since that date. (R. 33).

The Appeals Council denied review of the ALJ's decision. (R. 1-3). Thus, the

Commissioner's final decision is now subject to review.

## II.     Factual Background

Plaintiff was eight years old when he was first awarded disability benefits. (R. 15; 249). Plaintiff received disability benefits until the age of twelve, when the SSA issued a cessation letter determining he was no longer disabled as of January 1, 2017. (R. 99-109; 113-18). By the time of the hearing in front of the ALJ, Plaintiff had turned fifteen. (R. 15).

At the time of the hearing, Plaintiff was in ninth grade and enrolled in regular classes. (R. 48). He had never been held back a grade. *Id.* Plaintiff's school records reveal he consistently maintains a "C" or higher average and his grades vary between As, Bs, Cs, Ds, and Fs. (R. 363-64; 410-13; 597-604).

Plaintiff does not get along with his older brother and will sometimes get into arguments with his mother when she asks him to repeat things. (R. 53; 57-58). Plaintiff gets along well with his younger brother (R. 53-54) and has multiple friends with whom he enjoys spending time, drawing, and watching movies. (R. 50). In his free time, Plaintiff enjoys watching TV, watching videos on YouTube, and building miniatures out of cardboard. (R. 49; 53).

Most medical evidence indicates that Plaintiff's symptoms have improved with treatment since the initial disability determination. (R. 19-20). For example, his asthma appears to have completely subsided. (R. 369). Additionally, multiple doctors have reported improvement in Plaintiff's ADHD-related symptoms. (R. 634-56; 680-735).

Moreover, both state agency psychologists noted improvements in Plaintiff's mental health and opined that he had no marked limitations to any of the six domains. (R. 99-109; 626-31).

## III.   Applicable Legal Standards

### A.     Standard of Review

When evaluating whether a previously-disabled child remains eligible for benefits, an ALJ must follow the three steps outlined in 20 C.F.R. § 416.994a(b), which the Undersigned summarizes as follows:

1.  **Step one**. Has there been medical improvement in the child's impairment(s)? If so, then an ALJ next determines:

2.  **Step two**. Does the child's impairment(s) still meet or equal the severity of the listed impairment section that the child met or equaled before or at the time of the disability finding? If not, then an ALJ next considers:

3.  **Step three**. Is the child currently disabled under the rules, considering all the impairments that the child has now, including any not presented or considered in the earlier finding of disability? If so, then the child is disabled and entitled to benefits.

*See Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498-99 (11th Cir. 2021).

First, the ALJ must determine whether the claimant has experienced medical improvement since his most-recent favorable decision. "Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994a(c) The "most recent favorable decision" is also called the

"comparison point decision" ("CPD"). *See Verdecia v. Colvin*, No. 12-21057, 2015 WL 12556299, at *3 (S.D. Fla. Mar. 21, 2015).

At step two, if the disability at the CPD was based on an impairment meeting or medically equaling a listing, then the ALJ must determine if the claimant's impairments now meet or medically equal that same listing. 20 C.F.R. § 416.994a(b)(2).

At step three, the ALJ must conduct a three-part analysis to determine whether the claimant is disabled based on all current impairments. First, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 416.994a(3)(i). If the claimant has a severe impairment or combination of impairments, then the ALJ moves on to step two, which requires the ALJ to determine if the claimant's impairment(s) meet or medically equal any listed impairment. 20 C.F.R. § 416.994a(3)(i). If the claimant's impairments do not meet or medically equal a listing, then the ALJ must determine if the impairments functionally equal a listing by assessing the claimant's limitations in the six domains:

(i) Acquiring and using information;
(ii) Attending and completing tasks;
(iii) Interacting and relating with others;
(iv) Moving about and manipulating objects;
(v) Caring for yourself; and,
(vi) Health and physical well-being.

20 C.F.R. § 416.994a(3)(i); 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

A claimant's impairments functionally equal a listing if he has a "marked" limitation in two or more domains or an "extreme" limitation in one domain. 20 C.F.R. §

416.926a(d)

Unlike initial claims for disability, when considering a case for cessation of benefits, the burden is on the Commissioner to prove the claimant is no longer disabled due to "medical improvement." *Huie v. Bowen*, 788 F.2d 698, 705 (11th Cir. 1986) ("The law of this circuit is clear: a recipient of benefits may not be taken off the rolls until the Secretary shows medical improvement by substantial evidence.").

In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal citation omitted). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

IV.     **The ALJ's Findings**

In denying Plaintiff's appeal, the ALJ followed the sequential three-step process for cessation of benefit claims. (R. 19-33). At step one, the ALJ concluded that Plaintiff has experienced medical improvement as of January 1, 2017. (R. 19).

At step two, the ALJ concluded Plaintiff's impairments as of the CPD do not meet, medically equal, or functionally equal a listing. (R. 21).

At step three, the ALJ first determined that Plaintiff has the following severe combination of impairments: ADHD; generalized anxiety disorder; and depressive disorder. (R. 28). Next, the ALJ determined Plaintiff's combination of impairments do not meet or medically equal any listed impairment. *Id.* Finally, the ALJ determined that Plaintiff's combination of impairments do not functionally equal a listed impairment. *Id.*

The ALJ concluded Plaintiff had a "less than marked" limitation to his abilities to (1) acquire and use information (R. 30), (2) attend and complete tasks (R. 31), and (3) interact and relate with others (R. 32). Further, the ALJ concluded that Plaintiff had no limitations to (1) his ability to move and manipulate objects (R. 32), (2) his ability to care for himself (R. 33), and (3) his health and physical well-being (R. 33).

Accordingly, the ALJ found that Plaintiff's disability ended on January 1, 2017 and he has not become disabled again since that date. (R. 33).

V.      **Analysis**

Plaintiff raises three arguments in support of remand. In Plaintiff's first argument,

he claims the ALJ applied the incorrect regulatory standard when assessing the medical opinion evidence. To summarize, he claims the medical opinion evidence should have been assessed under 20 C.F.R. § 416.927(c)(2), which applies to claims filed before March 27, 2017, but the ALJ, instead, applied 20 C.F.R. § 416.920b, which applies to claims filed on or after March 27, 2017.

Plaintiff's second argument for remand alleges that the ALJ failed to properly assess the medical evidence of record. Specifically, Plaintiff argues that the ALJ's omission of Dr. Morino Molina's records from her final decision and her insufficient brief summary of Dr. David Echavarria's results both independently and collectively warrant a remand.

Plaintiff's final argument claims that the ALJ erred in concluding Plaintiff's impairments do not meet, equal, or functionally equal a listed impairment. This single-page argument essentially combines Plaintiff's previous two arguments and alleges these errors mean the ALJ's decision is not supported by substantial evidence.

For the reasons discussed below, the Undersigned rejects Plaintiff's arguments and finds merit in the Commissioner's position on the arguments asserted by Plaintiff.

A.    *The ALJ Properly Applied 20 C.F.R. Section 416.920b*

Plaintiff and Defendant's argument on this issue is simple: Plaintiff contends his application filing date is October 12, 2012 (the day he first applied for disability benefits) and Defendant avers Plaintiff's application filing date is March 30, 2017 (the day he

appealed the cessation of benefits). Although Plaintiff details at length the differences between 20 C.F.R. § 416.927(c)(2) and 20 C.F.R. § 416.920b, the Undersigned need not address these distinctions. Plaintiff does not argue that the ALJ applied the correct standard incorrectly; rather, he argues only that the ALJ applied the incorrect standard.

Neither side has presented any case law addressing the filing date determination. In Plaintiff's initial motion, he makes no meaningful effort to argue why the October 12, 2012 date should apply and, instead, discusses only the differences between the regulations and provides record examples of the ALJ's use of the purported incorrect regulation. [ECF No. 23].

In response, Defendant directs the Undersigned's attention to SSR 13-3p, which she claims clearly defines the filing date in a cessation of benefits claim. [ECF No. 26]. This ruling, she argues, means the ALJ was correct in applying the post-March 27, 2017 regulation. *Id.* Plaintiff, in his reply, claims that "Defendant's characterization of SSR 13-3p is absolutely incorrect and inapposite in the instant case." [ECF No. 28]. But he fails to provide any contrary authority as to the filing date determination issue and discusses the record evidence showing the ALJ applied the post-March 27, 2017 regulation.

20 C.F.R. § 416.927 governs how opinion evidence is evaluated for claims filed before March 27, 2017 and 20 C.F.R. § 416.920c governs how medical opinions and prior administrative medical findings are evaluated for claims filed on or after March 27, 2017. 20 C.F.R. § 416.927 ("For claims filed (see [20 C.F.R.] § 416.325) before March 27, 2017, the

rules in this section apply. For claims filed on or after March 27, 2017, the rules in §

416.920c apply.").[2]

SSR 13-3p was issued to "explain[] how [the SSA] will review an initial medical

cessation determination or decision when [the SSA] receive[s] a timely request for

administrative review of the cessation determination or decision." SSR 13-3p, 2013 WL

785484, at *1. Importantly, SSR 13-3p provides direction to the Administrative Counsel

and ALJs regarding the consideration of evidence and determinations that must be made

at various points when considering an appeal of an initial cessation determination,

stating, in pertinent part:

> In addition, a timely request for administrative review of a disability
> cessation determination or decision, including cases where we find good
> cause for late filing, constitutes a protective filing of an application
> permitting a determination of disability through the date of the final
> determination or decision on appeal.
>
> Adjudicators use the date of the initial request for review of the disability
> cessation determination as the filing date for a new period of disability. We
> establish a new period of disability if the beneficiary again became disabled
> as a result of a worsening of an existing impairment or by the onset of a new
> impairment before the date of the determination or decision on appeal, and
> if all other requirements for establishing a period of disability, including the
> duration and insured status requirements in title II cases, have been met. If
> cessation of a prior period of disability is confirmed, a beneficiary will not
> be found eligible for a subsequent period of disability if he or she did not

---

[2]   Although 20 C.F.R. § 416.927 directs the reader to 20 C.F.R. § 416.325 in reference
to the term "filed," 20 C.F.R. § 416.325 provides no guidance for this situation. *See* 20
C.F.R. § 416.325(a) ("General rule. We consider an application for SSI benefits filed on the
day it is received by an employee at any social security office, by someone at another
Federal or State office designated to receive applications for us, or by a person we have
authorized to receive applications for us.").

> become disabled again until after the date last insured (as determined after taking account of all prior periods of disability and updates to a claimant's earnings record).

*Id.* at *4.

Earlier in the ruling, SSR 13-3p distinguishes between the decisions the SSA makes after appeal and the initial cessation determination:

> In this SSR, we use the term "final decision" to differentiate between the initial cessation determination and the subsequent determination or decision on appeal that becomes administratively final. As used in this Ruling, "final decision" refers to the administrative determination or decision that becomes final because the beneficiary does not request further administrative review, or when the AC issues a decision.

*Id.* at *3.

Plaintiff argues that this provision applies "specifically to a 'new period of disability' in the event a 'beneficiary again became disabled as a result of worsening of an existing impairment or by the onset of a new impairment before the date of determination or decision on appeal.'" [ECF No. 28]. Further, under the Plaintiff's reading of SSR 13-3p, its reference to "a timely request for administrative review" refers to an "appeal of the ALJ's decision to the Appeals Council." *Id.*

In sum, Plaintiff argues that SSR 13-3p's filing date language applies to situations where either the claimant is seeking a "new period of disability" (presumably after having let the prior period lapse) or the claimant appeals an ALJ's decision to the council. In advancing these positions, Plaintiff maintains his *factual* stance that his disability never ended and equates this to a prohibition on the Commissioner from finding that there is a

new term of disability, which means the initial application date will always be Plaintiff's controlling filing date.

Neither of Plaintiff's proposed interpretations are supported by the language of SSR 13-3p. SSR 13-3p makes clear that "date of the initial request for review of the disability cessation determination as the filing date." Plaintiff cannot escape the clear meaning of this language. Factually, Plaintiff's mother received a disability determination from the SSA, which Plaintiff concedes meant "[the] SSA determined that [he] . . . was no longer disabled as of January 1, 2017." [ECF No. 23]. Thus, by his own admission, he acknowledges the SSA had already determined him no longer disabled -- which means any subsequent finding would be a new "term" of disability.

Further, 20 C.F.R. § 416.920c was enacted due to the SSA's attempt to simplify its policies and "reflect changes in the national healthcare workforce and in the manner that individuals receive medical care, and emphasize the need for objective medical evidence in disability and blindness claims." 82 Fed. Reg. 5844 (Jan. 18, 2017). Plaintiff, whose evidence consisted, at least in part, on medical treatment after January 18, 2017 (when the SSA formally acknowledged that medical care had changed), attempts to require an ALJ to follow an outdated regulation when considering Plaintiff's evidence and Plaintiff's case.

Because SSR 13-3p is clear in defining the filing date an ALJ is to consider when assessing a cessation determination appeal, and Plaintiff's appeal was filed after March

27, 2017, the ALJ applied the correct regulation in her ruling.

    **B.**    *The ALJ Was Not Required to Evaluate Medical Evidence from Dr. Molina and Dr. Echavarria as Medical Opinions*

Plaintiff claims the ALJ's decision is not supported by substantial evidence because (1) the decision makes no reference to Dr. Molina, a doctor who evaluated Plaintiff at least ten times between March 2017 and October 2018, and (2) the decision also insufficiently summarized the findings of Dr. Echavarria. [ECF No. 23]. Specifically, Plaintiff alleges the ALJ failed to evaluate Dr. Molina's and Dr. Echavarria's records as "medical opinions" under 20 C.F.R. 416.927(a)(2).

Defendant contends, in response, that the new regulations do not require the ALJ to assess Dr. Molina's objective findings because the findings do not qualify as a medical opinion. [ECF No. 26]. Defendant also disagrees with Plaintiff's characterization of the ALJ's summary of Dr. Echavarria's findings and argues the ALJ appropriately considered the evidence. *Id.* As a catch-all, final argument, Defendant contends that even if the ALJ erred, it was harmless error. *Id.*

Plaintiff cites an extensive number of regulations and cases supporting his argument that the ALJ was required to evaluate "every medical opinion [she] received." However, Plaintiff's arguments all share the same faulty premise: they incorrectly assume the Undersigned has decided in his favor on the issue of which regulation the ALJ was required to apply. As Defendant correctly notes, the change in regulations also impacted the definition of "medical opinion." *Compare* 20 C.F.R. § 416.913(a)(2) (applying to claims

filed on or after March 27, 2017) *with* 20 C.F.R. § 416.927 (applying to claims filed before March 27, 2017).

Under the new regulations, a "medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . your abilities in the six domains of functioning." 20 C.F.R. § 416.913(a)(2)-(a)(2)(ii). To contrast, before March 27, 2017, the SSA allowed a broader class of medical records to be considered medical opinions: "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Both versions of the regulations require the ALJ to evaluate (albeit under different standards) all medical opinions.

Neither the medical records from Dr. Molina nor Dr. Echavarria qualify as medical opinions under 20 C.F.R. § 416.913(a)(2). The records from both doctors fall outside the scope of this definition because neither offers any opinion on Plaintiff's abilities in the six domains of functioning. Although Dr. Molina met with Plaintiff on at least ten occasions during a period lasting longer than a year, the only insight provided in the records are the subjective statements of Plaintiff and Plaintiff's mother and the objective statements of Dr. Molina about Plaintiff's diagnosis as well as his ratings of Plaintiff's symptoms in emotional and physical areas (i.e., appearance, eye contact, speech, insight, mood,

judgment, coping skills, etc.).[3] At no point in Dr. Molina's records does he offer any opinion on Plaintiff's abilities, despite his limitations, to acquire and use information; attend and complete tasks; interact or relate with others; move or manipulate objects; care for himself; or his health and physical well-being. (R. 877-90); 20 C.F.R. § 416.913(a)(2)(ii)(A)-(F).

Similarly, Dr. Echavarria describes in detail Plaintiff's performance on a variety of tests and provides objective findings on Plaintiff's symptoms. (R. 597-604). But, also like Dr. Molina, Dr. Echavarria offers no opinion on Plaintiff's abilities in the six domains of functioning. *Id.* Thus, Dr. Echavarria's medical findings do not qualify as a medical opinion.

Both sets of records, instead, qualify as "objective medical evidence." 20 C.F.R. § 416.913(a)(1) ("Objective medical evidence is medical signs, laboratory findings, or both[.]"). The SSA's regulations do not place the same burden on ALJs to evaluate objective medical evidence as they do to evaluate medical opinions. Thus, the ALJ was

---

[3]     The length and depth of these records certainly seem to give good cause for consideration by the ALJ. Although these records do not qualify as "medical opinions," the Undersigned takes no position on whether the ALJ was required to evaluate the records under any other regulations. *See Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC*, No. 12-20744, 2013 WL 12093810, at *8, n.2 (S.D. Fla. Apr. 29, 2013) (declining to consider an argument not raised by the party); *see also Kottler v. Gulf Coast Collection Bureau, Inc.*, No. 19-cv-61190, 2020 WL 3064769, at *2 (S.D. Fla. June 9, 2020) ("[C]lear error or manifest injustice occurs where the Court . . . [makes] a decision outside the adversarial issues presented to the Court by the parties[.]"). The only argument raised here by Plaintiff is that the ALJ did not consider them as medical opinions and, thus, that is the only issue before the Undersigned.

not required to describe the persuasive value of Plaintiff's medical records from Dr. Molina.

Further, although not required to specifically assess Dr. Echavarria's medical findings as medical opinions, the Undersigned finds no error in the ALJ's summary of Dr. Echavarria's assessment. Although Plaintiff believes Dr. Echavarria's specific determinations support greater disability than that articulated by the ALJ, the ALJ's summary accurately states Dr. Echavarria's conclusion that Plaintiff's Attention Deficit Disorder mildly affects Plaintiff's activities of daily living, socialization, and attention and concentration. (R. 24; 601).

For these reasons, the ALJ did not err by not evaluating Plaintiff's medical records from Dr. Molina and Dr. Echavarria as medical opinions, and there is no basis to remand on that issue.

### C. *The ALJ's Findings on the Six Domains is Supported by Substantial Evidence.*

Plaintiff's final argument in support of remand is an amalgamation of his two previous arguments. He claims that the ALJ's conclusions about his limitations in the six domains are not supported by substantial evidence because of "the ALJ's failure to assess the opinion evidence under the proper regulatory standard, and failure to properly assess the opinions of Dr. Molina, a treating psychiatric source, and Dr. Echavarria, [the] SSA's

own consultative psychological examiner." [ECF No. 23].[4] The Undersigned has already rejected Plaintiff's arguments on those grounds.

Moreover, the ALJ's conclusions about Plaintiff's limitations in the six domains is supported by substantial record evidence.

The ALJ's conclusion that Plaintiff has a less than marked limitation in the area of acquiring and using information is consistent with Plaintiff's performance in small classes (R. 363-64; 413; 597-604), the findings of Dr. Echavarria (R. 598), and the findings of Dr. Falcon (R. 591-95).

The ALJ's conclusion that Plaintiff has a less than marked limitation in the area of attending and completing tasks is consistent with Plaintiff's improvement with ADHD medication (R. 574-76, 589-90, 608-10), Plaintiff's progression through school (R. 48), and Plaintiff's art and miniature-building hobbies (R. 52-54).

The ALJ's conclusion that Plaintiff has a less than marked limitation in interacting and relating with others is consistent with his testimony about his relationships with his

---

[4]      In addition to listing these specific purported failures, Plaintiff alludes to other failures by using the term "among other things." This is insufficient to properly preserve an argument. *See, e.g., Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) ("Outlaw also asserts that the ALJ erred in not crediting Outlaw's physical exertional impairments. But Outlaw has waived this issue because he did not elaborate on this claim or provide citation to authority about this claim.") (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim)); *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

friends and the issues he has had with his mother and teachers. (R. 50-58).

The ALJ's conclusion that Plaintiff has no limitation in moving about and manipulating objects is consistent with Plaintiff's testimony about his daily activities, including running, playing volleyball, and building miniatures. (R. 48-60).

The ALJ's conclusion that Plaintiff has no limitation in caring for himself is consistent with Plaintiff's testimony about his bathing habits (R. 48) and the descriptions from Citrus Health Network (R. 772-75).

The ALJ's conclusion that Plaintiff has no limitation in his physical health and well-being is consistent with the lack of medical records to support physical impairments and the finding that his asthma has not required treatment for an extended period. (R. 626-31).

It is not the job of the Court to decide the facts anew or reweigh the evidence. *Dyer*, 395 F.3d at 1210 (the Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner"). Because the ALJ applied the applicable regulations in evaluating the evidence and there is substantial evidence to support her decision, there is no basis for remand on this issue.

## VI.    Conclusion

The Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter final judgment in favor of the Commissioner.

## VII.   Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on December 15, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
The Honorable Marcia G. Cooke
All counsel of record